In our opinion the court below rightly sustained the demurrer.

AFFIRMED.

---

THE B. & M. R. R. Co. v. LAWSON.

THE SAME v. KELLEY.

THE SAME v. LAWSON ET AL.

1. **Railroads**: LAND GRANT: WHEN IT ATTACHED: PRE-EMPTION. In an action by plaintiff to recover lands alleged to have been included in its grant, but claimed by defendants under homestead entries, it was held that under the amendatory act of Congress of June, 1864, the grant of 1856, which was a grant *in presenti* in the nature of a float, was made definite and certain by reference to the line of said railroad as then located, and the lands granted became susceptible of accurate, certain and determinate designation; that the entries of the lands in controversy in October, 1864, were not valid, because the grant had already attached to those identical lands; and that the right thus acquired could not be impaired by subsequent legislation, state or national.

2. ——: ——: HOMESTEAD ENTRY. The act of Congress of 1876 is not applicable in this case. The right of the plaintiff did not depend upon the withdrawal of the lands from sale, or notice thereof. After the line of the road was definitely fixed the lands included were not subject to homestead entry, and an enterer could acquire no rights thereby.

*Appeal from Page District. Court.*

THURSDAY, APRIL 20.

THESE are actions for the recovery of certain real estate. They involve the same questions, and were tried in the court below as one case, and are presented in the same manner here with an agreement that final decree shall be entered in this court. There were decrees in the court below for the defendants and plaintiff appeals. ·

*Hepburn & Thummel* and *W. W. Baldwin,* for appellant.

*John R. Moreledge,* for appellee.

ROTHROCK, J.—The facts in the case are not in dispute, and so far as necessary to a determination of the questions involved, they are as follows:

1st. The lands in controversy are within the six miles limit of the grant of lands made to the plaintiff by the act of the Congress of the United States, approved June 2d, 1864, and the lands were duly certified to the plaintiff by the Commissioner of the General Land Office, on the 30th day of January, 1869, and the certificates were approved by the Secretary of the Interior February 3d, 1869, and proper lists furnished to the plaintiff.

1. RAILROADS: land grant: when it attached: preemption.

2d. The line of railway of the plaintiff was completed to its western terminus, and to a point opposite said lands in the year 1869.

3d. On the 16th day June, 1864, all lands of the United States within the State of Iowa, were withdrawn from sale by order of the Secretary of the Interior, and on the 25th day of August, 1864, all the said lands were restored to sale and entry, by letter of the Secretary of the Interior.

4th. The defendants entered the lands in controversy under the homestead law, on the 15th of October, 1864. The entries were suspended by the land department and on the

3d day of April, 1866, they were canceled by the Commissioner of the General Land Office, because they conflicted with the grant of June 2d, 1864, and defendants were given sixty days in which to perfect appeals to the Secretary of the Interior, but no appeals were taken. In 1873 counsel for defendants filed with the Commissioner of the General Land Office, an argument for a rehearing. What if any action was had on said argument does not appear.

5th. In 1878 defendants filed with the Commissioner of the General Land Office their applications for the re-entry of said lands under the act of Congress, approved April 2d, 1876, and in 1879 the Commissioner of the Land Office permitted the defendants to make re-entries and issued to them patents therefor, based on the said homestead entries and re-entries, and the defendants are now the holders of said patents.

6th. The defendants have been in possession of the lands continuously since 1864, and have occupied and cultivated the same as homesteads. These actions were commenced in 1874.

The plaintiffs claim title to the land in question under the act of Congress, approved May 15th, 1856, as amended by the act approved June 2d, 1864. The third section of the last named act is as follows:

"That the Burlington and Missouri River Railroad Company, a corporation organized under the laws of the State of Iowa, and to which said State granted a portion of the land grant mentioned in the title to this act, to aid in the construction of said railroad from Burlington, in said State, to the Missouri river, shall be entitled to receive, and the Secretary of the Interior shall cause to be certified and convey to said company, from time to time, as the road progresses, out of any public lands now belonging to the United States, and not sold or reserved, or otherwise disposed of, or to which pre-emption claim, or right of homestead settlement does not attach, and on which bona fide settlement and improvement have not been made under color and title derived from the U. S., or from the State of Iowa, within six miles of said

road, as now located, the amount of lands per mile equal to that mentioned in the act to which this act is an amendment as intended, to aid in the construction of said road, and if the amount of land granted by the original act to aid in the construction of said road shall not be found within the limits of six miles of the line of said road, then such selections may be made on such lands within twenty miles thereof."

It has frequently been determined that the grant under the act of 1856, was a grant in *presenti*, in the nature of a float, until such time as the specific tracts could be ascertained by location of the line of railroad upon the surface of the earth.   See *C., R. I. & P. R. Co. v. Grinnell*, 51, Iowa, 476, and, *same case*, Supreme Court United States, October term, 1880.   It will be observed, however, that by the amendatory act of 1864, the grant was made definite and certain by reference to the line of road as then located.   The line having been fixed and determined as required by law, the grant was no longer a float, but the lands were susceptible of accurate, certain and determinate description and designation.

At the time of the passage of this act the defendants made no claim to the land in controversy.   Their claims to the land originated by the attempted homestead entries in October, 1864.   Leaving out of view the fact that these entries were canceled by the Commissioner of the General Land Office, and no appeal taken from the order of cancellation, it appears to us that, whether the lands were withdrawn from sale or homestead pre-emption or not, no valid sale or pre-emption could be made, simply because the grant to the railroad company had attached to these identical lands.   It was a present grant subject to be defeated upon failure to complete the railroad as required by the law, and upon no other ground, and as is held in *C., R. I. & P. R. R. Co. v. Grinnell, supra*, the right thus acquired could not be impaired by legislation, either state or national.   The railroad was completed and the land properly certified as required by law, and the title taken thereby related back to the date of the grant.

II. It is claimed, however, that the defendants are invested with title under the provisions of the first section of the act of Congress, approved April 21st, 1876, which is as follows: "That all pre-emptions and homestead entries, or entries in compliance with any law of the United States, on the public lands, made in good faith, by actual settlers, upon tracts of lands of not more than 160 acres each, within the limits of any land grant, and prior to the time when notice of the withdrawal of the lands embraced in such grant was received by the local land office of the district in which such lands are situated, or after their restoration to the market by the General Land Office, and where pre-emption and homestead laws have been complied with, and the proper proofs thereof have been made by the parties holding such tracts or parcels, they shall be confirmed, and patents for the same shall issue to the parties entitled thereto."

*2. —: —: homestead entry.*

What land grants may be referred to by this act we are unable to determine, nor is it necessary that we should do so. It is enough to say that the act can have no application to lands, like those in controversy in this case, where the title had passed from the United States, years before the passage of the act under consideration. By the acts of 1856 and 1864 the rights of the railroad company did not depend upon the withdrawal of the lands nor upon notice of such withdrawal.

When the line of the road was definitely fixed, the lands were not "subject to homestead entry, and an enterer could acquire no rights against the grants under the act." *Blair Town Lot and Land Co. v. Kitteringham*, 43 Iowa, 462.

Without further elaboration or citation of authorities, we deem it sufficient to say that the views herein expressed are in accord with the repeated rulings of this court, and of the Supreme Court of the United States.

The decrees of the District Court must be reversed, and as counsel have stipulated for decrees in this court, decrees will be entered for the plaintiff.

REVERSED.